**EXCHANGE BANK OF KENTUCKY,**
**Appellant,**

v.

**Kenneth WELLS and White, McCann**
**& Stewart, Attorneys at Law,**
**Appellees.**

No. 91–CA–002997–MR.

Court of Appeals of Kentucky.

March 19, 1993.

Discretionary Review Denied by
Supreme Court Sept. 24, 1993.

Angela A. Patrick, Mt. Sterling, for appellant.

John H. Rompf, Jr., Winchester, for appellees.

Before DYCHE, GARDNER and HUDDLESTON, JJ.

GARDNER, Judge:

Appellant, Exchange Bank of Kentucky (Exchange Bank) appeals from an order of the Montgomery Circuit Court adjudging that appellee, White, McCann & Stewart, Attorneys at Law (White, McCann & Stewart), was entitled to a lien upon a judgment secured by appellee, Kenneth Wells (Wells) for services White, McCann & Stewart rendered Wells. Exchange Bank which had secured a judgment against Wells sought to set off the entire judgment awarded Wells against its larger judgment against him.

Wells owned a grocery business in Montgomery County, Kentucky. In September 1987, Wells leased his grocery store and equipment to Thurman Jones for a five year period. Jones placed Sharon and Roger Conatser in possession and control of the grocery business, and they continued to operate the business.

In November 1987, Wells refinanced business loans that he had at Exchange Bank. Exchange Bank took a mortgage on Wells' business property to secure a $132,293.46 loan. Wells, later in May 1988, obtained another loan of $19,500, and Exchange Bank took another mortgage on Wells' property. In November 1987, Wells assigned his right and interest in his lease with Jones to Exchange Bank. After that point, Exchange Bank assumed control over the lease and received all rent payable from the lessee. At some point Exchange Bank terminated the lease with the lessee. Wells contended that he was never made aware of Exchange Bank's intention to terminate the lease and that he did not learn of the termination until some time after the lessee had vacated the premises.

Wells, in January 1990, employed White, McCann & Stewart to prosecute an action against Jones, Exchange Bank, and the Conatsers. He alleged in this action that Exchange Bank had wrongfully terminated the lease and had also failed to properly manage the leasehold, thus, causing a decline in property value. Wells and White, McCann & Stewart entered into a contract whereby the firm was to receive one-third of any judgment or recovery for Wells as compensation for the services it rendered Wells. Thus, White, McCann & Stewart on behalf of Wells, filed the action in Montgomery Circuit Court.[1] Exchange Bank counterclaimed on the delinquent notes and sought foreclosure on Wells' property.

On July 20, 1990, the circuit court granted a summary judgment for Exchange Bank on the delinquent notes in the amount of $136,480.23 plus interest. On April 25, 1991, a jury awarded Wells $84,848.44 with interest.[2]

---

1. A summary judgment was entered for Jones. Wells and the Conatsers reached a settlement so the case proceeded to trial only against Exchange Bank.

2. Exchange Bank filed an appeal with this Court following that judgment, but this Court dismissed the appeal.

Exchange Bank subsequently obtained an order of sale, and at the sale, it purchased the property for $50,000. Exchange Bank sought to have the circuit court set off Wells' judgment against its judgment against Wells.

White, McCann & Stewart, on June 18, 1991, moved the circuit court to adjudge a lien on one-third of Wells' judgment for its attorneys' fees. The circuit court entered an order on December 9, 1991, adjudging that White, McCann & Stewart was entitled to a lien equal to one-third of Wells' judgment. This equated to $28,282.70 plus interest. The circuit court further ruled that the amount was not subject to any set-off in favor of Exchange Bank. Exchange Bank has appealed from this order.

■ Exchange Bank's argument in this appeal is fourfold. It contends that the circuit court should be reversed because an attorney's lien gives an attorney no greater rights against a judgment debtor than his client has, that where opposing judgments are entered in the same action, the equities of the parties are superior to the lien of the attorney, that an attorney's lien attaches after rendition of the judgment and takes subject to existing set-offs, and that a prior mortgage is superior to a subsequent attorney's lien. We have carefully reviewed each of Exchange Bank's arguments, but we find that under the established Kentucky law, the circuit court correctly held that White, McCann and Stewart were entitled to recover attorneys' fees from Wells' judgment.

Kentucky Revised Statute (KRS) 376.460 provides:

> Each attorney shall have a lien upon all claims, except those of the state, put into his hands for suit or collection or upon which suit has been instituted, for the amount of any fee agreed upon by the parties or, in the absence of such agreement, for a reasonable fee. If the action is prosecuted to a recovery of money or property, the attorney shall have a lien upon the judgment recovered, legal costs excepted, for his fee.

Under KRS 376.460, the existence of the lien causes the claim for a fee to be an integral part of the subject matter of the action. *LaBach v. Hampton,* Ky.App., 585 S.W.2d 434, 435 (1979).

■ It has long been held by Kentucky Courts in construing prior versions of this statute that if it later develops that an attorney is entitled to a lien, such lien relates back to the time the contract is made between the attorney and client. *Birkhead v. Ringo,* 274 Ky. 498, 119 S.W.2d 662, (1938); *T. Harlan & Co. v. Bennett, Robbins & Thomas,* 127 Ky. 572, 106 S.W. 287 (1907). *See Brown & Bro. v. Lapp,* 28 Ky.L.Rptr. 409, 89 S.W. 304 (1905). The statute does not require that the money shall have been paid on the judgment where the attorney's lien rights are concerned. *Arny v. Johnson,* Ky., 443 S.W.2d 543, 545 (1969). The facts in the instant case are essentially similar to those in *T. Harlan & Co. v. Bennett, Robbins & Thomas, supra,* where the court held that the attorneys were entitled to recover attorneys' fees even though the judgment for their client was less than the judgment for the other party. *See also Birkhead v. Ringo,* 119 S.W.2d at 662.

■ Kentucky's rule that an attorney's lien relates back to the time of the commencement of services, and that an attorney's lien takes precedence is also the law in other jurisdictions. *See Hanna Paint Manufacturing Co. v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d 371 (10th Cir.1962) (construing New Mexico law); *Adam Martin Construction Co. v. The Brandon Partnership,* 135 Ill.App.3d 324, 90 Ill.Dec. 162, 481 N.E.2d 962 (1985); *Weiser v. The City of New York and Kings County Trust Co.,* 16 A.D.2d 666, 226 N.Y.S.2d 929 (1962); *Stribling Motor Co. v. Smith,* 195 Miss. 547, 15 So.2d 364 (1943). The enforceability of the attorney's lien is founded upon the theory that the judgment is the product of the services and skill of the attorney. *Hanna Paint Manufacturing Co. v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d at 371. An attorney's lien on the fund that he or she created should be granted priority over set-off judgments. *Weiser v. The City of New York and Kings County Trust Company,* 226 N.Y.S.2d at 930. Further, we are persuaded by counsel's argument that the trial court's right to set off one judgment against another is equitable in nature, and thus, the trial court has the power to determine the amount and manner of set-off. *See LaFleur v. Schiff,* 239 Minn. 206, 58 N.W.2d 320, 324 (1953).

We have carefully reviewed the cases cited by Exchange Bank, but we believe that many of them are not applicable to the instant case. Most of the Kentucky cases cited by Exchange Bank are simply not similar factually. The many cases from other jurisdictions cited by Exchange Bank are not applicable, because the decisions were based upon different statutes or rules which differ from Kentucky's long held rulings in this area. Finally, contrary to Exchange Bank's assertions, the evidence in this case indicates that Wells and White, McCann & Stewart may not have been aware at the time Wells' action was commenced that the lease had been terminated by Exchange Bank, and that the value of Wells' property after the Conatsers vacated it had diminished so greatly from the value that had been assigned to the property during an earlier appraisal. Thus, this case differs from *Howell v. Highland Cemetery Co.*, 297 Ky. 659, 181 S.W.2d 44 (1944), and other cases relied upon by Exchange Bank. The circuit court correctly applied Kentucky law.

For the foregoing reasons, the Montgomery Circuit Court's order is affirmed.

All concur.